4300 MARINE DRIVE CONDOMINIUM ASSOCIATION, Plaintiff-Appellee and Cross-Appellant, v. JEANNE TENENBLATT *et al.*, Defendants-Appellants and Cross-Appellees (Lenore Tenenblatt, Intervenor).

First District (5th Division)   No. 1—89—2326

Opinion filed September 30, 1991.—Modified on denial of rehearing December 13, 1991.

Robert D. Kreisman and Thomas P. Beyer, both of Chicago, for appellants.

Steinberg & Steinberg, Ltd., of Chicago (Charles M. Steinberg and Frances S. Steinberg, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from the trial court's order granting plaintiff attorney fees incurred prosecuting tenant's (Jeanne Tenenblatt's) defaults under a declaration of condominium agreement. Plaintiff cross-appeals from a subsequent order denying supplemental attorney fees for counsel's appellate level and subsequent trial level work. On appeal, we consider (1) whether the trial court erred in granting plaintiff attorney fees for prosecuting tenant's defaults and for contesting opposing counsel's unfounded objections to their fee petition; and (2) whether the trial court erred in denying supplemental attorney fees to plaintiff for defending a premature appeal; for completing trial level work after the premature appeal; for preparing motions to disqualify the defendants' counsel and for sanctions; and for interest on the recoverable fees.

We affirm in part, reverse in part, and remand.

The record in this case, consisting of transcripts from over 21 court hearings and over 800 pages of motions, addresses essentially one issue—attorney fees. We find this fact peculiarly disturbing given that the underlying complaint involved a claim against an elderly woman for less than $1,000. Therefore, we reluctantly set forth a lengthy statement of facts.

In late 1986, Jeanne Tenenblatt, a woman over 70 years of age with an estate valued over $1 million, owned and occupied a unit in the 4300 Marine Drive Condominium in Chicago. Specifically, Tenenblatt was the trustee of her self-trust dated July 21, 1983, which held title to the unit. The trust agreement designated the Northern Trust Company as successor trustee in the event

Tenenblatt became incapacitated. The Northern Trust Company also held a mortgage on the unit.

The 4300 Marine Drive Condominium Association (Association) began receiving complaints that Tenenblatt was engaging in tortious conduct which included thefts from neighbors and a physical assault on the doorman. The police contacted Tenenblatt's daughter, Lenore, in Boston urging her to obtain psychiatric care for her mother but Lenore would not agree.

During this time, Tenenblatt also failed to pay three months of fee assessments on her condominium unit. The Association brought an action in forcible entry and detainer. Tenenblatt appeared in court and attempted to justify her behavior. The court, after strongly recommending that Tenenblatt obtain an attorney, scheduled a hearing for the next week. Tenenblatt appeared again without an attorney, and the court entered judgment for the Association, including $550 in attorney fees plus $40 in costs. However, Lenore partially satisfied the judgment before expiration of the stay on enforcement, thus entitling Tenenblatt to remain in possession of the unit.

Tenenblatt's misbehavior continued. The Association contacted various social welfare agencies but was unable to gain assistance without the participation of an immediate family member. Lenore continually refused to participate. The Association also employed counsel (Steinberg & Steinberg) to pursue the remedies under the declaration of condominium agreement. Accordingly, the Association notified Tenenblatt that it intended to terminate her rights to occupy, use or control the unit. The Association then filed the instant complaint, in equity, naming as defendants Jeanne Tenenblatt, individually and as trustee to the unit; the Northern Trust Company as mortgagee; the Cook County registrar of titles; and other various parties who it was thought might have a property interest in the unit. However, the complaint did not name as a defendant the Northern Trust Company as successor trustee under Tenenblatt's trust agreement.

Count I sought an injunction against Tenenblatt's tortious conduct and either possession of the unit or a decree for a judicial sale. Count II sought a foreclosure lien for the unpaid assessment fees ($992) and for attorney fees and costs.

After the named defendants failed to appear or otherwise plead, the trial court entered a default order on June 16, 1987. The matter was continued to June 23 for a prove up hearing on attorney fees.

Tenenblatt also failed to appear at the June 23 prove up hearing. The court, nonetheless, heard 11 witnesses and received substantial evidence concerning Tenenblatt's tortious conduct and the Association's attorney fees incurred responding to the problem. The Association also moved the court to enter a preliminary injunction or temporary restraining order against Tenenblatt during the pendency of the case. The trial court decided to appoint a guardian *ad litem* and if possible to compel the family to institute permanent guardianship. The court ordered the Association to contact Lenore again.

On August 23 Lenore personally appeared before the court and the court entered a mandatory injunction requiring her to petition for guardianship. Lenore's counsel (Kreisman & Rakich) filed a petition in the probate court. Kreisman & Rakich utilized the evidence from the June 23 prove up hearing in support of the guardianship. The probate court declared Jeanne Tenenblatt disabled; appointed Lenore guardian of Tenenblatt's person; and appointed Thomas Beyer, an attorney with Kreisman & Rakich, temporary guardian of her estate. Pursuant to his representation as guardian, Beyer petitioned the court several times during the pendency of the litigation for attorney fees to be paid out of Tenenblatt's estate.

Tenenblatt was removed from her condominium unit and placed under institutional care. Attorney-guardian Beyer tendered payment for the outstanding $992 assessment fees which the Association accepted. However, Beyer refused to discharge the Association's claim for attorney fees and employed his law firm, Kreisman & Rakich, to provide legal opposition.

On September 15, 1987, Beyer successfully moved to vacate the June 16, 1987, order of default. As part of the court order, the parties expressly agreed that "said temporary guardian and the [Association] stipulate that in moving to vacate the order of default the temporary guardian does not contest the evidence presented in the prove up of June 23, 1987, which shall remain undisturbed, and further disclosing that said temporary guardian [*sic*] relied upon said evidence in [the guardianship proceedings]." However, defense counsel stated in open court: "We don't mean to overturn anything that transpired at the prove up, although for the record of course and to preserve my client's rights, this is not a stipulation with respect to the legal significance of the evidence that was adduced at the prove up."

Thereafter, the court granted the Association leave to file a "Motion for Partial Summary Judgment as to Attorney Fees and

Costs." Attached to the motion was a fee petition itemizing a total of $14,389 incurred in attorney fees and $1,276 in costs. In support of its rights to the fees, the Association cited article 20 of the declaration of condominium agreement and the Illinois Condominium Property Act (Ill. Rev. Stat. 1987, ch. 30, par. 301 *et seq.*) (Condominium Act). The court and the attorneys agreed to delay the next hearing date in hope that the issue of attorney fees might be settled.

Beyer's settlement offer of "33 cents on the dollar" was flatly rejected, and the parties appeared before the court again on February 8, 1988. Beyer argued that the Association's claims under the complaint were moot because the $992 had been paid and Tenenblatt had been removed from her condominium unit. The court responded:

"Now if there is a question of fees here, this court will hear it. I am not going to sidestep it. You might as well face it openly."

The court directed Beyer to file a response to the Association's motion for partial summary judgment as to fees.

Subsequently, the trial court presided over *four* days of hearings on the issue of attorney fees. At the third hearing, the Association filed a supplemental fee affidavit of attorney Frances Steinberg covering fees incurred since the date of filing the motion for partial summary judgment. The court initially ruled that the affidavit was inadmissible as "fees on fees," but after considerable argument, the court decided to take the issue under advisement. At the fourth hearing, attorney-guardian Beyer objected that because the affidavit was "never noticed up for hearing," he did not have time to respond; he also complained that he did not have an opportunity to cross-examine Frances Steinberg. The record reflects, however, that Beyer was provided with copies of the affidavit in advance of the third hearing.

At any rate, over the course of the four hearings Beyer objected to and attacked over 250 of the 331 total itemized fees. In light of Beyer's objections, the trial court added:

"[T]here were times here in this case the Court was constrained and was considering the possibility of a 2—611 against the defendant as a result of some of the issues raised by the defendant which this Court felt were completely unjustified."

The trial court then entered the June 23, 1988, order which forms, in first part, the basis for this appeal. The order found that

Tenenblatt in fact committed numerous tortious acts; that Tenenblatt was adjudicated incompetent; that the institution of the guardianship matter was the proximate result of the prosecution of the instant proceeding; that the appointment of the guardian and removal of Tenenblatt from the unit rendered the granting of further equitable relief under count I unnecessary; that prior to Tenenblatt's removal from her condominium the Association incurred reasonable attorney fees in the amount of $14,321 plus $1,418 in costs; that under both the declaration of condominium agreement and the Condominium Act Tenenblatt was liable for those attorney fees plus costs and that any unpaid amount constituted a lien against the unit; that after the guardian was appointed and Tenenblatt was removed from the unit, the Association incurred an additional $6,948 in attorney fees contesting the "unfounded objections" of the guardian to the fee petition and adjudicating the amount of the Association's lien; and, finally, that "the greater weight of proof of the evidence in connection with fees" is in favor of the Association "as to the reasonableness." Thus, it was ordered that the Association had a lien for the total amount of fees and costs and if the lien was not discharged within 30 days the Association would be entitled to the entry of a decree of foreclosure and sale. The matter was continued to July 21 for a hearing on the entry of the decree of foreclosure and sale.

After the order was entered, the Association sent Beyer a letter stating "if you do not timely avail yourself to the opportunity to correct your objection [to the supplemental fee affidavit] we will move to rectify your objection." The letter also stated "[i]n the interest of once and for all ending this matter and the ongoing, continuing liability of the Tenenblatt estate for the Association's attorney fees, we are willing to waive any further attorney fee claims if you will conclude this matter with us by Monday, July 11."

Thus, by July 1988, it appeared that this already excessive litigation over less than $1,000 would finally terminate. Such was not the case. As the following shows, the parties perpetuated the litigation for yet another year.

Without responding to the letter and before the scheduled July 21 hearing date, Beyer filed a notice of appeal divesting the trial court of jurisdiction. The Association, believing that the notice of appeal was premature, filed motions in the trial court to perfect the record thereby showing that the affidavit was technically admitted into evidence; to afford Beyer the opportunity to cross-examine Frances Steinberg or to determine that such examination was

waived; for supplemental attorney fees incurred after the June 23, 1988, order; and for sanctions. The Association also requested the court to enter the decree of foreclosure and sale pursuant to the June 23, 1988, order. The parties appeared before the trial court, but Beyer refused to withdraw the notice of appeal, thereby preventing the Association's motions from being heard and a final and appealable order entered. Nonetheless, the trial court granted defendant's motion to set appeal bond.

The Association filed a motion in the appellate court to dismiss the appeal and for sanctions pursuant to the rules governing appeals. Beyer argued that the appeal was taken in good faith because the trial court had stated in open court during the hearings "I will give you plenty [*sic*] so that you can take it up on appeal." The appellate court entered an order dismissing the appeal but denied without prejudice the request for sanctions.

The Association then filed another motion in the trial court to reset the motions pending prior to the premature appeal. In responding, Beyer failed to pursue his opportunity to cross-examine Frances Steinberg on the issue of the supplemental fee affidavit. The Association then filed yet another supplemental fee affidavit for fees incurred defending the premature appeal. The trial court delayed scheduling a hearing on the issue of sanctions in light of the advent of Supreme Court Rule 137 (134 Ill. 2d R. 137).

On October 1, 1988, Northern Trust Company (Northern), in view of Tenenblatt's disability, accepted its appointment as successor trustee to the unit. Northern did not, however, file an appearance in the instant proceeding and also failed to respond to the Association's letters notifying it of its interest in the litigation. On December 6 the trial court directed that a summons be issued to defendant Northern as successor trustee. On February 1, 1989, Kreisman & Rakich appeared for the first time on behalf of substitute defendant Northern as successor trustee.

Also on February 1, Northern as mortgagee filed its appearance and moved to vacate the default entered against it. The motion stated that Northern was "interested in preserving its security interest" in the unit and that because the Association knew about the security interest it would not be prejudiced by an order vacating the default. The court granted the motion.

In addition, Northern as mortgagee filed a counterclaim to protect its security interest. Although the counterclaim named the Association as counterdefendant, the claim sought a "judgment against Jeanne Tenenblatt, her assigns or successors in the amount of $15,929

plus interest." The Association responded by filing a motion to disqualify Kreisman & Rakich. The motion argued that a conflict of interest existed by virtue of (1) Kreisman & Rakich's representation of both Northern as mortgagee (lender) and Northern as successor trustee (borrower), and (2) its request for judgment in favor of Northern as mortgagee and against Jeanne Tenenblatt, her assigns or successors. The Association also alleged that, as a further result of the conflict of interest, Kreisman & Rakich failed to communicate its settlement offers to the defendants. Kreisman & Rakich filed a response denying any conflict of interest in its concurrent representation of a total of four defendants.

On February 1, 1989, with the Association's decree of foreclosure motion still pending, defendants Northern as successor trustee and Beyer as guardian moved for leave to privately sell the unit, release the *lis pendens*, and substitute part of the sale proceeds as cash collateral in an amount to be determined by the court. The Association objected but the court granted the motion. The unit was sold, and the court required $60,000 to be deposited with the court. Northern's mortgage was also satisfied with another portion of the proceeds.

Notwithstanding the involvement of Northern as successor trustee in the private sale of the unit, Kreisman & Rakich next insisted on filing a motion to dismiss said defendant on the ground that the original complaint did not name Northern as successor trustee and that the allegations of the complaint were moot to said defendant. The court directed the Association to amend the complaint to explain the liability of Northern as successor trustee.

On April 17, 1989, the trial court heard the motion to disqualify Kreisman & Rakich. After lengthy arguments, the court denied the motion. The matter had been reported to and investigated by the Attorney Registration and Discipline Commission, but as a result of the denial order, the investigation was closed. In regard to the sanctions, the court indicated its reluctance to award fees as sanctions and continued the matter.

On May 8, 1989, the Association filed the amended complaint naming as a defendant Northern as successor trustee. The amended complaint again requested the court to foreclose its lien. In the event the $60,000 deposited with the court was insufficient to satisfy the lien, the amended complaint requested a deficiency judgment against the statutory unit owner. Not surprisingly, the Association filed a "Supplemental Cumulative Fee Affidavit" for the period June 21, 1988, through June 13, 1989.

Finally, on August 14, 1989, the trial court entered a seven-page "Memorandum, Opinion and Order" which forms, in second part, the basis for this appeal. The order first addresses the Association's request for supplemental attorney fees categorized by the court as follows:

"A. The [Association's] defending of attorneys Kreisman & Rakich's appeal of the matter.

B. The [Association's] work completed on the trial level for the period of June 21, 1988 through June 13, 1989.

C. The [Association's] preparation of a motion to disqualify Kreisman & Rakich as attorneys in the case and to seek Section 2—611/Rule 137 sanctions against the same and/or the guardian."

The order, citing *Rosinia v. Brown* (1963), 42 Ill. App. 2d 424, 192 N.E.2d 443, denied the fees under category "A" on the ground that the Association did not demonstrate to the court that the premature appeal was taken in bad faith or taken to delay the trial proceedings. The order, citing *Caruso v. Board of Trustees* (1984), 129 Ill. App. 3d 1083, 473 N.E.2d 417, denied the fees under category "B" on the ground that Illinois courts have long prohibited "fees on fees." The order, citing *Caruso* again, denied the fees under category "C" on the ground that because the motions for sanctions and to disqualify Kreisman & Rakich were denied, the Association was not entitled to fees for arguing those motions.

Because the Association was entitled to fees pursuant only to the June 23, 1988, order, Northern as successor trustee was dismissed on the ground that a new party may not assume liability for any awards made prior to its becoming a party to the suit. The August 14, 1989, order also granted Beyer's motion to vacate the *lis pendens* and denied the Association's request that the trial court retain jurisdiction to rule on the awarding of future fees. Finally, the order provided that the fees granted in the June 23, 1988, order be satisfied out of the $60,000 on deposit in the court and the balance be delivered to Tenenblatt or her guardian. However, the order denied interest on all of the recoverable fees from the June 23, 1988, order.

Defendants filed a notice of appeal contesting the June 23, 1988, order and plaintiff filed a notice of appeal contesting the August 14, 1989, memorandum, opinion and order.

OPINION

We begin by again expressing our displeasure with this case. After Tenenblatt was removed from the condominium unit and the out-

standing assessment fees paid, the attorneys perpetuated this litigation for an additional two years all at the great expense of Tenenblatt's estate and the court's time. We cannot help but consider that if Tenenblatt's estate did not have over $1 million in assets, this case would have been disposed of without delay.

As to the legal issues raised on appeal, we find no purpose in disturbing either the trial court's June 23, 1988, order or the August 14, 1989, memorandum, opinion and order except as indicated below.

■ In the June 23, 1988, order the trial court applied the language of both article 20 of the declaration of condominium agreement and the Illinois Condominium Property Act (Ill. Rev. Stat. 1987, ch. 30, par. 301 *et seq.*) in deciding to allow the attorney fees. Article 20 states that pursuant to the Association's right to prosecute a defaulting unit owner "[a]ll expenses *** in connection with any such actions or proceedings, including court costs and attorney fees, *** shall be charged to and assessed against such defaulting unit owner." The Condominium Act states that if a unit owner defaults the expenses, including "reasonable attorney fees," shall constitute a lien on the property. (Ill. Rev. Stat. 1987, ch. 30, par. 309(g)(1).) We find no error in the trial court's application of this language and therefore affirm the June 23, 1988, order to the extent that it allows attorney fees and costs.

Furthermore, after the hearings Beyer failed to move the court for the opportunity to cross-examine Frances Steinberg on the issue of the supplemental fee affidavit. Thus, Beyer waived his right to object to these fees on appeal. In addition, the order specifically provides that "the greater weight of proof of the evidence in connection with the fees herein is in favor of the plaintiff and against the defendant as to the *reasonableness* of the fees." Therefore, we affirm the total amount of fees allowed in the June 23, 1988, order including the $6,948 in supplemental fees. Also, the Association is entitled to interest on these fees. (*6334 North Sheridan Condominium Association v. Ruehle* (1987), 157 Ill. App. 3d 829, 510 N.E.2d 975.) The additional issues raised by defendants on appeal contesting the June 23, 1988, order are without merit.

■ In the August 14, 1989, memorandum, opinion and order, the trial court invoked its discretion and denied the request for all fees incurred after the June 23, 1988, order. The Association argues that it had a right to these fees as a matter of law or, alternatively, that the trial court abused its discretion in denying the fees. We disagree with each of these arguments. The plain language of the declaration of condominium agreement limits recovery of fees in-

curred only "in connection with" a prosecution against a defaulting unit owner. We hold that a fair analysis of the fees as categorized by the court shows that the fees exceeded the limit provided in the agreement. The trial court had already awarded the Association an additional $6,948 for contesting the unfounded objections of the defendants. We hold that the denial of even more fees in the form of sanctions or otherwise was not an abuse of discretion. Accordingly, we affirm the August 14, 1989, memorandum, opinion and order except to the extent that it denies interest on all of the recoverable fees from the June 23, 1988, order. The additional issues raised on appeal by the Association contesting the August 14, 1989, memorandum, opinion and order are without merit.

Affirmed in part, reversed in part, and remanded.

GORDON and McNULTY, JJ., concur.